UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:13-CR-76 |
| | § | (CIVIL ACTION NO. 2:14-CV-439) |
| RODRIO PEDOMO | § | |

**ORDER DISMISSING § 2255 MOTION WITH PREJUDICE AND
DENYING A CERTIFICATE OF APPEALABILITY**

On November 3, 2014, the Clerk received Movant Rodrio Pedomo's (Pedomo) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 45. He also filed a Certificate of Inmate Trust Account. D.E. 46. Because it plainly appears from the Court's review of the motion and the record of prior proceedings that Pedomo is not entitled to any relief, the Court dismisses the motion. Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts (2014) (2255 Rules). Pedomo is also denied a certificate of appealability.

### I. BACKGROUND

Pedomo was convicted of illegal reentry pursuant to his guilty plea and sentenced to 57 months imprisonment in the Bureau of Prisons in December 2013. D.E. 33. During the criminal proceedings, he was represented by appointed counsel. D.E. 2.

After Pedomo entered his guilty plea, the Probation Department prepared a Presentence Investigation Report (PSR). D.E. 21. The base level offense for Illegal Reentry is 8. U.S.S.G. § 2L1.2(a). Pedomo was previously convicted of a drug trafficking, which enhanced his offense level by 16 points (U.S.S.G. § 2L1.2(b)(1)(A)(i)). *Id*. at ¶¶ 12, 24. Pedomo's final offense level was calculated to be 21, after credit for acceptance of responsibility. *Id*. at ¶ 20. He had three

drug convictions and was still on supervised release which resulted in a criminal history category of IV.[1] Id. at ¶¶ 22-27. His sentencing range was 57-71 months. Id. at ¶ 43.

During sentencing, the Court considered Pedomo's prison education efforts and a letter from Pedomo's wife. D.E. 25-27, 31, 42 at p. 9-10. Counsel argued that for a first illegal reentry even a low end guideline sentence of 57 months was harsh and urged the Court to downwardly depart to 46 months, particularly in light of the additional sentence Pedomo would receive for revocation of his supervised release in another case. D.E. 42, p. 11. After hearing the arguments, the Court sentenced Pedomo to 57 months for illegal reentry and to 10 months in the revocation proceeding. Id., pp. 15-16. The sentences to be served consecutively. Id., p. 16.

Pedomo appealed his sentence and was appointed new counsel on appeal. D.E. 35. On November 4, 2014, the Fifth Circuit Court of Appeals dismissed his appeal as frivolous and issued the mandate. United States v. Pedomo, No. 13-41339 (5th Cir. November 4, 2014). Pedomo timely filed his present motion.

## II.  MOVANT'S ALLEGATIONS

Pedomo claims his Sixth Amendment right to effective assistance of counsel was violated when counsel 1) failed to request a fast track downward departure, 2) failed to request a downward departure on the ground of cultural assimilation, and 3) by misleading Pedomo to tell the Court that he only came to the United States for his daughter's graduation.

## III.  ANALYSIS

**A.   28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's

---

[1] Pedomo's supervised release revocation was heard in 2:13-CR-130.

jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**B.     Ineffective Assistance of Counsel**

   1. *Standard for claims of ineffective assistance of counsel*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d

452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

    2. *Failure to request a downward departure for cultural assimilation*

Pedomo claims that counsel should have argued at sentencing for a downward departure on the grounds of cultural assimilation. In Application note 8 to § 2L1.2 of the Sentencing Guidelines, a court is permitted to downwardly depart based upon cultural assimilation.

> Such a departure should be considered *only* in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

Application note 8 (emphasis added). The focus is on those persons who have lived most of their life in the United States and whose family resides in the United States. *Id*.

At the time of sentencing, Pedomo was a fifty year old Columbian citizen. He was born in Columbia to Columbian parents. D.E. 21, ¶ 29. His mother died in 2002 and his father still lives in Columbia. *Id*. His secondary education was completed in Columbia. *Id*., ¶ 34. Pedomo has three siblings, two who live in New York, and one who lives in McAllen. Pedomo had attained legal resident status in the United States until it was revoked in July 2005. *Id*., ¶ 29.

In 1992, Pedomo married a United States citizen in Queens, New York and had two children who are also U.S. citizens. He divorced his wife in 2002. Pedomo has a younger son in Columbia, age 12. *Id*., ¶ 30. The PSR does not state what year Pedomo entered the United States, but it appears he entered by 1991 when he was approximately 28. While in the United States, Pedomo spent much of his time in prison. He was incarcerated between June 1991 and August 1993 and again between June 2002 and May 2011, when he was deported. D.E. 21, ¶¶ 22-24.

Immediately before his entry into the United States in 2013, Pedomo was residing in Columbia, was employed in Columbia, owned a home there, a car and was caring for his elderly father. *Id*., ¶ 36. Pedomo did not come to the United States because of cultural ties from his youth and was not educated in the United States. According to Pedomo's statements at sentencing, he came to see his children. D.E. 42, pp. 11-12. He lost his permanent resident status after his conviction for conspiracy to distribute heroin in the Southern District of New York in 2004. He was removed from the United States in 2011 after he completed his sentence.

Pedomo does not fit within the category of those eligible for downward departure on the grounds of cultural assimilation and his continued presence in the United States posed a threat to the public as a result of his serious drug offenses. Pedomo cannot establish that he sustained any prejudice from counsel's failure to make an argument for cultural assimilation in light of this Court's expressed concern about Pedomo's drug history at sentencing and this Court's rejection of counsel's request for a downward departure. *See* D.E. 42, p. 13-16

3. *Fast track*

Pedomo also claims that counsel should have argued for downward departure pursuant to the fast track program. Pedomo was sentenced after the Corpus Christi Division of the Southern District of Texas initiated a fast track program in 2012.[2] But Pedomo has not established that he qualified for the fast track program in light of his previous drug trafficking offence.[3] "The

---

[2] In January 2012, the Attorney General issued a Memorandum on Department Policy on Early Disposition or "Fast-Track Programs. http://www.justice.gov/dag/fast-track-program.pdf. That Memorandum reflected a change in policy to use fast track programs in all districts and to establish uniform guidelines for the use of the policy to become effective on March 1, 2012. *Id.*

[3] The Memorandum was clear, "This policy does not, however, alter the criteria for prosecutorial discretion on whether to charge a particular defendant, nor does it require prosecuting additional cases." *Id*. at p. 1. Additionally, the government determined eligibility criteria for Illegal Reentry defendants that included,

government's decision to offer a fast track plea offer is no different from the Attorney General's prosecutorial discretion regarding whether to prosecute, what charge to file, whether to offer a plea agreement, etc. These are areas generally left entirely to the prosecutor's discretion." *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (due process was not violated when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged.).

Pedomo has not established that counsel was ineffective for failing to urge that he be sentenced pursuant to a program for which he did not qualify. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

    4. *Argument regarding defendant's presence in the United States*

Pedomo claims that counsel suggested that Pedomo claim he was only present in the United States to attend his daughter's graduation and that counsel's advice misled him. Pedomo does not provide any factual context for his claim. Pedomo testified at sentencing,

> 13 THE DEFENDANT: Okay. I'm going to read something.
> 14 Before anything, I'd like to apologize for my acts. I accept
> 15 the responsibility for the actions I have taken. And I'm very
> 16 remorseful for what I have done.
> 17 I want you to know that I'm not the same person that

---

    Districts prosecuting felony illegal reentry cases (8 U.S.C. § 1326)—the largest category of cases authorized for fast-track treatment—shall implement an early disposition program in accordance with the following requirements and the exercise of prosecutorial discretion by the United States Attorney:

> A. Defendant Eligibility. The United States Attorney retains the discretion to limit or deny a defendant's participation in a fast-track program based on—
>> (1) The defendant's prior violent felony convictions (including murder, kidnapping, voluntary manslaughter, forcible sex offenses, child-sex offenses, *drug trafficking*, firearms offenses, or convictions which otherwise reflect a history of serious violent crime) . . . .

*Id*. at p. 3 (emphasis added).

18 I was years ago. I now have my own business in Colombia. And
19 after I got out of prison, I went to the university in
20 Colombia. I took some classes, administrator, small business
21 administration. And with those classes, the Government has
22 helped me build a business.
23 The reason why I came into this country, it was to
24 see my daughter graduate. She was graduating in June from high
25 school in Miami. I sent the photographs, her graduation
1 photos, if you would like to see them.
2 I would like to let you know that I didn't come into
3 this country to do any harm. I love this country, just as
4 other people do. I wanted to be at her graduation, return to
5 my country and continue my business. But I believe that I
6 didn't really measure the consequences.
7 Instead of bringing her that happiness that she would
8 have felt by seeing me there, it brought her sadness,
9 unhappiness. And now she tells me, when she asks me, "Why did
10 you do it," she is not -- she does not agree with what I have
11 done, what I did.
12 Once again, I want to tell you that I'm profoundly,
13 so remorseful. And in Colombia, I have a woman, a wife that is
14 my companion. As a matter of fact, we both built that business
15 together, a system engineer, and she has helped me quite a bit.
16 And I would like, for the age -- for my age, I do not
17 want any more problems. I do not think I ever again will
18 return to this country. Actually, I didn't think. I didn't
19 think it was this difficult to come in. In the time that I was
20 in the valley, lost there in the valley, I saw death real
21 close. And I believe that was part of my punishment for, for
22 not having thought it over with more -- for not thinking about
23 it more responsibly.
24 Once again, I ask forgiveness. I ask forgiveness,
25 and I promise you that I will not be back here, come back here.
1 All my family is in the United States. Just my father is with
2 me in Colombia. And I was the one that cared for him.
3 Hopefully it's not going to be a long time. I'm hoping that I
4 find him alive, because he's elderly and ill.
5 Once again, I apologize, and I accept my
6 responsibility for the facts of the things that I have done.
7 Whatever Your Honor's decision is, may God bless you, and thank
8 you very much.

D.E. 22, pp. 11-13.

Pedomo's complaint regarding counsel's alleged advice is unclear and devoid of facts. Pedomo's failure to link his complaints to the facts of his case is fatal. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim."). Pedomo has not established that counsel provided ineffective assistance.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Pedomo has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Pedomo is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

For the reasons stated, this Court DISMISSES Pedomo's 28 U.S.C. § 2255 motion (D.E. 45) with prejudice pursuant to Rule 4(b) and DENIES him a certificate of appealability.

SIGNED and ORDERED this 2nd day of December, 2014.

_____
Janis Graham Jack
Senior United States District Judge